**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

_____
                                        )
FEDERAL TRADE COMMISSION,               )
                                        )
                    Plaintiff,          )          Case No.07-cv-00558-RPM-CBS
                                        )
              v.                        )
                                        )
DEBT SET, INC.,                         )
        a Colorado corporation;         )
                                        )
DEBT-SET,                               )
        a Nevada corporation;           )
                                        )
RESOLVE CREDIT COUNSELING, INC.,        )
        a Colorado corporation;         )
                                        )
WILLIAM "BILL" RIGGS, individually and as an )
        officer or director of Debt Set, Inc. and )
        Debt-Set;                       )
                                        )
MICHELLE TUCKER, a.k.a. Michelle Mangan, )
        individually and as an officer or director of )
        Resolve Credit Counseling, Inc.; )
                                        )
LEE TUCKER, a.k.a. Leo Mangan, individually, )
        and as an officer or director of Debt-Set; and )
                                        )
ISAAC KHAN, a.k.a. Issac M. Klan or Ishaq )
        Mohammad Khan, individually,    )
        and as an officer or director of Debt-Set;)
                                        )
                    Defendants.         )
_____)

### _EX PARTE_ TEMPORARY RESTRAINING ORDER


The Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), having

filed its Complaint for Injunctive and Other Equitable Relief, *see* [#1] filed March 20,

2007, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15

U.S.C. § 53(b), and having moved for an *ex parte* Temporary Restraining Order with

Asset Freeze and Other Equitable Relief ("TRO"), *see* [#2] filed March 20, 2007,

pursuant to  Rule 65 of the Federal Rules of Civil Procedure and D.C.COLO.LCivR

65.1, and the Court having considered the complaint, motion, declarations, exhibits,

and memorandum of law filed in support thereof, *see* [#17] filed March 20, 2007, and

now, being advised in the premises, enters the following findings of fact, conclusions of

law, and orders for injunctive and equitable relief:

## FINDINGS

1.      This Court has jurisdiction of the subject matter of this case, and there is

good cause to believe it will have jurisdiction of all parties hereto;

2.      Venue is proper under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. §

53(b).

3.      There is good cause to believe that Defendants have engaged and are

continuing to engage in acts and practices that violate Section 5(a) of the Federal Trade

Commission Act, 15 U.S.C.  § 45(a), and, as such, the Commission is likely to prevail

on the merits of this action;

4.      It clearly appears from specific facts shown by affidavit or declaration that

immediate and irreparable injury, loss, and damage will result to the Commission, its

constituency, the clients and customers of Defendants, and the public before the

defendants and their legal counsel can be heard in opposition, all within the meaning of

Fed. R. Civ. P. 65(b)(1);

5.      As required by Fed. R. Civ. P. 65(b)(2), legal counsel for the Commission has certified to the Court in writing the reasons supporting the claim that notice should not be required;

6.      There is good cause to believe that immediate and irreparable damage to the constituency represented by the Commission and to the Court's ability to grant effective final relief in the form of monetary restitution or disgorgement will occur from the sale, transfer, or other disposition or concealment by Defendants of their assets or corporate and/or business records unless Defendants are immediately restrained and enjoined by order of this Court, and that the interests of justice, therefore, require that the Commission's motion be heard without prior notice to defendants pursuant to Fed. R. Civ. P. 65(b);

7.      There is good cause for the appointment of a Temporary Receiver over Defendants, DEBT SET, INC., DEBT-SET CORPORATION, and RESOLVE CREDIT COUNSELING, INC.;

8.      After weighing and balancing the equities and after concluding that it is likely that the Commission will succeed ultimately on the merits, the Court concludes that the issuance *ex parte* of a TRO with an asset freeze, appointment of a Temporary Receiver, and other equitable relief is warranted, necessary, and in the public interest; and

9.      Under  Fed. R. Civ. P. 65(c), no security is required of the Commission as an agency of the United States for the issuance of a restraining order.

## DEFINITIONS

For purposes of this TRO, the following definitions shall apply:

1.      "Assets" means any legal or equitable interest in, right to, or claim to, any real and personal property, including, but not limited to chattels, goods, instruments, equipment, fixtures, general intangibles, inventory, checks, notes, leaseholds, effects, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and cash, wherever located, whether in the United States or abroad.

2.      "Corporate Defendants" means Debt Set, Inc., Debt-Set, and Resolve Credit Counseling, Inc., as well as the successors, assigns, affiliates and subsidiaries of the aforementioned entities.

3.      "Individual Defendants" means (i) William Riggs, (ii) Michelle Tucker a.k.a. Michelle Mangan, (iii) Lee Tucker a.k.a. Leo Mangan, and (iv) Isaac Khan a.k.a. Issac M. Klan or Ishaq Mohammad Khan.

4.      "Defendants" means (a) each Corporate Defendant, and (b) each Individual Defendant.

5.      "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings,

4

graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

6.      "Person" means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

7.      "Programs" means the debt settlement and debt consolidation plans being marketed, sold, and/or operated by Defendants.

## ORDER

## I.

## PROHIBITED BUSINESS ACTIVITIES

**IT IS, THEREFORE, ORDERED** that, in connection with the advertising, promoting, offering for sale, or sale of Defendants' Programs, the Defendants, and their successors, assigns, officers, agents, servants, employees, and attorneys, and any person acting in active concert or participation with them who receives actual notice of this TRO by personal service or otherwise, are temporarily restrained and enjoined from

      A.      Misrepresenting, or assisting others in misrepresenting, expressly or implicitly, that Defendants will substantially reduce consumers' debts;

      B.      Misrepresenting, or assisting others in misrepresenting, expressly or

implicitly, that Defendants will negotiate a substantial reduction in consumers' interest rates, such as to between zero and nine percent;

C.     Misrepresenting, or assisting others in misrepresenting, expressly or implicitly, that Defendants will obtain settlements with consumers' creditors for a substantially reduced amount such as "fifty cents on the dollar" or between fifty and sixty percent of the total amount of unsecured debt consumers owe;

D.     Misrepresenting, or assisting others in misrepresenting, expressly or implicitly, that Defendants will not charge or collect from consumers any upfront fees for their participation in Defendants' Programs; and

E.     Misrepresenting, or assisting others in misrepresenting, expressly or implicitly, that enrolling in Defendants' Programs will prevent or assist consumers with preventing creditors from calling, harassing, or commencing collections litigation against consumers.

## II.

## ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants, and their successors, assigns, officers, agents, servants, employees, and attorneys, and any person acting in active concert or participation with them who receives actual notice of this TRO by personal service or otherwise, are temporarily restrained and enjoined from

A.      Transferring, converting, encumbering, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, or otherwise disposing of any assets, wherever located, that are (a) owned or controlled, in whole or in part, by any Defendant; (b) titled or held in the name, individually or jointly, of any Defendant; (c) in the actual or constructive possession of any Defendant; or (d) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with, any Defendant, including, but not limited to, any assets held by or for any Defendant at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind;

B.      Opening or causing to be opened any safe deposit box titled in the name of or subject to access by any Defendant;

C.      Incurring any charges or cash advances on any credit card, debit card, or checking card issued in the name, individually or jointly, of any Defendant;

D.      Securing a loan with or incurring a lien on the real property, the personal property, or other asset in the name, individually or jointly, of any Defendant;

Notwithstanding the provisions of this Section II, assets shall be transferred as otherwise provided in this TRO, including but not limited to Section III entitled "Duties of Asset Holders" and Section VIII "Turnover of Property to the Temporary Receiver." Furthermore, each Individual Defendant will be permitted to withdraw up to, but no more than, $147 per day in living expenses from a personal bank account that said Individual Defendant owns individually and/or jointly with another person, provided that he or she identifies in writing to counsel for the Commission the personal account from which he or she intends to withdraw such funds. Any release of funds pursuant to this provision must be authorized in writing by counsel for the Commission.

*Provided, however*, that the assets affected by this Section II shall include: (1) all assets of Defendants as of the time this TRO was entered; and (2) for assets obtained after the time this TRO was entered, only those assets of Defendants that are derived in connection with or related in any way to Defendants' Programs.

## III.

## DUTIES OF ASSET HOLDERS

**IT IS FURTHER ORDERED** that pending determination of the Commission's request for a preliminary injunction, any financial or brokerage institution, business entity, or person served with a copy of this TRO that holds, controls, or maintains custody of any account or asset titled in the name of, held for the benefit of, or otherwise under the control of any Defendant, shall

A.     prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or otherwise disposal of any of the funds, documents, property, or other assets held by or under such entity's or person's control except:

        1.    as directed by further order of the Court or authorized in writing by the Commission; or

        2.    for assets held in the name or for the benefit of any Corporate Defendant, as directed by the Temporary Receiver appointed herein;

B.     Deny any person or entity access to any safe deposit box that is

        1.    titled in the name of any Defendant, either individually or jointly; or

        2.    otherwise held for the benefit of or subject to access by any Defendant.

Notwithstanding these subsections, both the Commission and the Temporary Receiver appointed herein shall be provided with access to any safe deposit box individually or jointly titled in the name of, subject to access by, or held for the benefit of any of the Corporate Defendants.  If the Commission and/or the Temporary Receiver elects to open such a safe deposit box, the owner or, alternatively, the person to whom the safe

deposit box has been leased and/or licensed shall be required to (i) be present at the time of the initial opening, (ii) cooperate in drafting a written inventory of the contents of the safe deposit box, and (iii) sign the written inventory affirming that the inventory accurately and completely describes the contents of the safe deposit box.

C.    Provide both the Commission and the Temporary Receiver appointed herein, within three (3) business days of receiving a copy of this Order, a sworn statement setting forth:

1.    the identification number of each such account or asset titled in the name, individually or jointly, or held on behalf of, or for the benefit of, any Defendant;

2.    the balance of each such account, or a description of the nature and value of such asset as of the time this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

3.    the identification of any safe deposit box that is either titled in the name, individually or jointly, or is otherwise subject to access by any Defendant;

D.     Within five (5) business days of a request by either the Temporary Receiver or the Commission, provide the Temporary Receiver or the Commission with copies of all records or other documentation pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

E.     Cooperate with all reasonable requests of the Temporary Receiver and/or the Commission relating to implementation of this Order, including the transferring of funds.

## IV.

## FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that within five (5) business days following the service of this TRO, each Defendant shall

A.     Provide the Commission and the Temporary Receiver with a full accounting of all funds, documents, and assets outside of the United States which are (1) titled in the name, individually or jointly, of any Defendant; or (2) held by any person or entity for the benefit of any Defendant; or (3) under the direct or indirect control, whether individually or jointly, of any Defendant;

B.    Transfer to the territory of the United States and deliver to the Temporary Receiver all funds, documents, and assets located in foreign countries which are (1) titled in the name individually or jointly of any Defendant; or (2) held by any person or entity, for the benefit of any Defendant; or (3) under any Defendant's direct or indirect control, whether individually or jointly; and

C.    Provide the Commission and the Temporary Receiver access to all records of accounts or assets of any Defendant held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order.

**V.**

**INTERFERENCE WITH REPATRIATION**

**IT IS FURTHER ORDERED** that Defendants, and their successors, assigns, officers, agents, servants, employees, and attorneys, and any person acting in active concert or participation with them who receives actual notice of this TRO by personal service or otherwise, are temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section IV of this TRO, including but not limited to

A.    Sending any statement, letter, fax, e-mail or wire transmission,

telephoning or engaging in any other act, directly or indirectly, that results

in a determination by a foreign trustee or other entity that a "duress" event

has occurred under the terms of a foreign trust agreement until such time

that all assets have been fully repatriated pursuant to the preceding

Section IV of this TRO;

B.     Notifying any trustee, protector or other agent of any foreign trust or other

related entities of either the existence of this TRO, or of the fact that

repatriation is required pursuant to a court order, until such time that all

assets have been fully repatriated pursuant to the preceding Section IV of

this TRO.

## VI.

## APPOINTMENT OF A TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that **Michael D. Burns** (*see* Attachment G to the

Plaintiff's Declaration of Counsel in Support of Motion for <u>Ex</u> <u>Parte</u> Temporary

Restraining Order with Asset Freeze, Appointment of Temporary Receiver, Immediate

Access, and Expedited Discovery, and with Recommendation of Receiver [#2-4] filed

March 20, 2007) is appointed as Temporary Receiver for each and every Corporate

Defendant, with the full powers of an equity receiver.  The Temporary Receiver shall be

the agent of this Court and solely the agent of this Court in acting as receiver under this

TRO.

**VII.**

**DUTIES AND AUTHORITY OF THE TEMPORARY RECEIVER**

**IT IS FURTHER ORDERED** that the Temporary Receiver is directed and authorized to accomplish the following consistent with this order and the FTC Act:

A.    Assume full control of the Corporate Defendants and all powers of the Corporate Defendants' directors, officers and managers, and remove any and all Individual Defendants, and any officer, independent contractor, employee, or agent of any of the Corporate Defendants, from control and management of the affairs of any and all Corporate Defendants, as the Temporary Receiver deems necessary or advisable;

B.    Take exclusive custody, control, and possession of all the funds, property, mail, and other assets of, in the possession of, or under the control of any Corporate Defendant, wherever situated.  The Temporary Receiver shall have full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of any Corporate Defendant, including documents related to customers or clients whose interests are now held by or under the direction, possession, custody, or control of any Corporate Defendant;

C.    Take all steps necessary to secure the business premises of the Corporate Defendant, including but not limited to premises located at 2060 Broadway, Suite 1, Boulder, Colorado 80302 and 1327 Spruce Street, Boulder, Colorado 80302, and any and all other premises, storage or other facilities under the control of any Corporate Defendant, including, but not limited to

1.    completing a written inventory of all receivership assets;

2.    obtaining pertinent information from all employees and other agents of the Defendants, such as the name, home address, social security number, job description, method of compensation, accrued and unpaid commission and compensation of each employee or agent;

3.    changing the locks and disconnecting any computer modems or other means of access to the computer or other documents maintained at that location; and/or

4.    requiring any persons present on the premises at the time this TRO is served to leave the premises, to provide the Temporary Receiver with proof of identification, and to demonstrate to the Temporary Receiver's satisfaction that such persons are not removing from the premises any of

the Defendants' documents, records or assets;

D.   Preserve, hold and manage all Receivership assets, and perform all acts necessary to preserve the value of those assets, in order to prevent any loss, damage or injury to customers or clients;

E.   Manage and disburse sufficient Receivership assets and funds to protect the interests of customers and clients and to prevent any loss, damage or injury to customers and clients;

F.   Prevent the withdrawal or misapplication of funds entrusted to any Corporate Defendant, and otherwise protect the interests of Defendants' customers or clients;

G.   Manage and administer any and all Corporate Defendants by performing all acts incidental thereto that the Temporary Receiver deems appropriate, including hiring or dismissing any and all personnel or suspending operations;

H.   Collect all money or property owed to any Corporate Defendant;

I.   Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal, international, or foreign court necessary to preserve or increase the assets of any Corporate Defendant or to carry out his or her duties pursuant to this TRO;

J. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Temporary Receiver deems advisable or necessary in the performance of its duties and responsibilities under the authority granted by this TRO;

K. Issue subpoenas to obtain documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the Receivership estate at any time, including prior to the discovery conference. Corporate Defendants, and their principals, and their respective officers, agents, employees, and attorneys, shall cooperate with and assist the Temporary Receiver with formal and informal discovery, including, if deemed necessary by the Temporary Receiver, appearing for deposition testimony and producing documents, on two (2) business days' notice (which may be sent by facsimile) and responding to written discovery requests on five (5) calendar days' notice (which may be sent by facsimile);

L. Open one or more bank accounts as designated depositories for funds of the Receivership Estate. The Temporary Receiver shall deposit all funds of any Corporate Defendant in such designated accounts and shall make all payments and disbursements from the Receivership estate from such accounts;

M. Make payments and disbursements from the Receivership estate that are

necessary or advisable for carrying out the directions of, or exercising the authority granted by, this TRO. The Temporary Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by any Corporate Defendant prior to the date of entry of this TRO, except for payments that the Temporary Receiver deems necessary or advisable to secure assets of any Corporate Defendant;

N.    Allow representatives of the Commission reasonable access to inspect the Defendants' books, records, accounts, premises, computers, and other property, wherever located;

O.    Continue and conduct the business of the Corporate Defendants in such manner, to such extent, and for such duration as the Temporary Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned on the Temporary Receiver's good faith determination that the businesses can be operated lawfully at a profit using the assets of the receivership estate; and

P.    Prepare and submit a Report to this Court and to the parties, not less than three (3) business days before the scheduled date for the Preliminary Injunction hearing. Such Report may include any information the Temporary Receiver determines is material to the preliminary injunction

hearing, but must include a summary of the Temporary Receiver's preliminary findings about

    1.  whether any Corporate Defendant has in its possession material, evidence, records, or documents which constitute a reasonable basis for Defendants' representation that the Corporate Defendants successfully negotiate with their clients' creditors to lower interest rates being charged to consumers to "between zero and nine percent";

    2.  whether any Corporate Defendant has in its possession material, evidence, records, or documents which constitute a reasonable basis for Defendants' representation that the Corporate Defendants successfully negotiate with their clients' creditors to reduce and/or settle consumers' debts at fifty to sixty percent of what consumers owe;

    3.  whether any Corporate Defendant has in its possession material, evidence, records, or documents which constitute a reasonable basis for Defendants' representation that the Corporate Defendants successfully manage to prevent or assist creditors with preventing creditors from calling, harassing, and litigating debt or collection claims against their clients;

    4.  whether the Receiver has found proof of payments by any

Corporate Defendants to their clients' creditors; and

5. the nature of the relationship among DEBT SET, INC., DEBT-

SET, and RESOLVE CREDIT COUNSELING, INC.

**VIII.**

**TURNOVER OF PROPERTY TO THE TEMPORARY RECEIVER**

**IT IS FURTHER ORDERED** that immediately on service of this TRO on them,

Defendants, and their successors, assigns, officers, agents, servants, employees, and

attorneys, and any person acting in active concert or participation with them who

receives actual notice of this TRO by personal service or otherwise, shall immediately

or within such time as permitted by the Temporary Receiver in writing, deliver to the

Temporary Receiver:

A.     Possession and custody of all funds, assets, property, and all other

assets, owned beneficially or otherwise, wherever situated, of any

Corporate Defendant;

B.     Possession and custody of the documents of any Corporate Defendant,

including but not limited to all books and records of accounts, all financial

and accounting records, balance sheets, income statements, bank

records (including monthly statements, canceled checks, records of wire

transfers, and check registers), client lists, title documents, and other

papers;

C.     Possession and custody of all assets being held by or on behalf of the

Corporate Defendant or on behalf of any of the Corporate Defendants'
clients or customers;

D.     All keys, computer passwords, entry codes, and combinations to locks
necessary to gain or to secure access to any of the assets, data,
information, or documents of any Corporate Defendant, including but not
limited to access to any Corporate Defendant's operations, business
premises, means of communication, accounts, computer systems, or
other property; and

E.     Information identifying the accounts, employees, properties or other
assets or obligations of any Corporate Defendant.

## IX.

## DUTY TO COOPERATE WITH THE TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Defendants, and their successors, assigns,
officers, agents, servants, employees, and attorneys, and any person acting in active
concert or participation with them who receives actual notice of this TRO by personal
service or otherwise, shall cooperate fully with and assist the Temporary Receiver.  This
cooperation and assistance shall include, but not be limited to, providing any
information to the Temporary Receiver that the Temporary Receiver deems necessary
to exercise the authority of the Temporary Receiver; providing any password required to
access any computer or electronic files in any medium; and discharging the

responsibilities of the Temporary Receiver under this TRO, and advising all persons who owe money to any Corporate Defendant that all debts should be paid directly to the Temporary Receiver.

## X.

## STAY OF ACTIONS

**IT IS FURTHER ORDERED** that except by leave of the this Court, during the pendency of this action before the Court, Defendants, as well as (i) any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee, or attorney of any Defendants, and their successors, assigns, officers, agents, servants, employees, and attorneys, and any person acting in active concert or participation with them who receives actual notice of this TRO by personal service or otherwise, are enjoined and stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of any Corporate Defendant, the Temporary Receiver, Receivership assets, or the Temporary Receiver's duly authorized agents acting in their capacities as such, including but not limited to the following actions:

A.    Commencing, prosecuting, litigating, or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

B.    Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of any Corporate Defendant or any

property claimed by any Corporate Defendant, or attempting to foreclose, forfeit, alter, or terminate any of the Corporate Defendants' respective legal or equitable interests in property, whether such acts are part of a judicial proceeding or otherwise;

C.     Using any form of set-off, alleged set-off, or any form of self-help, or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of any Corporate Defendant, or the Temporary Receiver, or any agent of the Temporary Receiver; and

D.     Doing any act or thing to interfere with the Temporary Receiver assuming control, possession, or management of the property subject to the Receivership, or to in any way interfere with the Temporary Receiver or the duties of the Temporary Receiver; or to interfere with the exclusive jurisdiction of this Court over the property and assets of any Corporate Defendant.

This Section X does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or

regulatory power.

## XI.

## COMPENSATION OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and all personnel hired

by the Temporary Receiver as authorized by this TRO, including counsel to the

Temporary Receiver, are entitled to reasonable compensation and expenses for the

performance of duties pursuant to this TRO and for the cost of actual out-of-pocket

expenses incurred by them, from the assets now held by, or in the possession or

control of, or which may be received by any Corporate Defendant. The Temporary

Receiver shall file with the Court and serve on the Commission and Defendants

periodic requests for the payment of such reasonable compensation, with the first such

request filed no more than sixty (60) calendar days after the date of this TRO. The

Temporary Receiver shall not increase the hourly rates used as the bases for such fee

applications without prior approval of the Court.

## XII.

## TEMPORARY RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Temporary Receiver shall file with the Clerk

of this Court a bond in the sum of $25,000 with sureties to be approved by the Court,

conditioned that the Temporary Receiver will well and truly perform the duties of office

and abide by and perform all acts the Court directs. The Defendants shall indemnify

and hold harmless the Temporary Receiver for any claim made against the Temporary

Receiver arising out of the Temporary Receiver's activities pursuant to this TRO or further orders of the Court. The Temporary Receiver shall not be personally liable for the debts of any Defendant, or its receivership.

## XIII.

## MAINTENANCE OF RECORDS

**IT IS FURTHER ORDERED** that Defendants, and their successors, assigns, officers, agents, servants, employees, and attorneys, and any person acting in active concert or participation with them who receives actual notice of this TRO by personal service or otherwise, are temporarily restrained and enjoined from directly or indirectly destroying, mutilating, erasing, altering, concealing, or disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or business or personal finances of any Defendant.

## XIV.

## ACCESS TO RECORDS AND PREMISES

**IT IS FURTHER ORDERED** that Defendants, as well as (i) any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee or attorney of any Defendant, and (ii) any person acting in active concert or participation with any of the foregoing who receives actual notice of this Order by personal service or otherwise, shall allow the Commission and the Temporary Receiver immediate access to all premises where Defendants are conducting business or have conducted business and to all premises where Defendants' business records may be located, so that the

representatives of the Commission and the Temporary Receiver may inspect all documents of Defendants and may copy such documents either on or off the premises.

**XV.**
**PRODUCTION OF RECORDS IN**
**INDIVIDUAL DEFENDANTS' PERSONAL RESIDENCES**

**IT IS FURTHER ORDERED** that if, at the time of service of this TRO, any records or property relating to Defendants' business or assets are located in the personal residence of any Individual Defendant, then such Defendant shall, within 48 (forty-eight) hours of service of this TRO, produce to the Commission, at a location designated by Plaintiff in Boulder, Colorado:

A.   All contracts, accounting data, written or electronic correspondence, advertisements, computer tapes, discs, or other computerized or electronic records, books, written or printed records, handwritten notes, telephone logs, telephone scripts, telephone bills, receipt books, ledgers, membership records and lists, refund records, receipts, bank records (including personal and business monthly statements, canceled checks, records of wire transfers, and check registers), appointment books, copies of federal, state, and local business or personal income or property tax returns, 1099 forms, title records, and other documents or records of any kind that relate to Defendants' business or assets; and

B.   All computers and data in whatever form, used by Defendants, in whole or in part, relating to Defendants' business or assets.

**XVI.**

**SERVICE OF ORDER**

**IT IS FURTHER ORDERED** that copies of this TRO may be served by any reliable means, including facsimile, personal delivery, courier, or mail, on any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of any Corporate Defendant or Individual Defendant, or that may be subject to any provision of this TRO.

**XVII.**

**EXPEDITED DISCOVERY**

**IT IS FURTHER ORDERED** that prior to the preliminary injunction hearing or the expiration of this Temporary Restraining Order, whichever occurs first, the Commission and/or the Temporary Receiver may depose or subpoena any Defendant pursuant to Fed. R. Civ. P. 30 and 45, on twenty-four (24) hours' notice, for the purpose of discovering the nature, location, status, or extent of Defendants' assets, and the nature and location of documents reflecting the business transactions of any Defendant. Any deposition taken pursuant to this provision is in addition to, and not subject to, the presumptive limits on depositions set forth in Fed. R. Civ. P. 30 and/or 31. Subpoenas may be served by agents or attorneys of the Commission or the Temporary Receiver and by agents of any process server retained by the Commission or the Temporary Receiver. Nothing in this provision shall affect the Court's ability to further modify the discovery rules as they apply in this matter.

**XVIII.**

**FINANCIAL STATEMENTS**

**IT IS FURTHER ORDERED** that, at least (3) three calendar days prior to the preliminary injunction hearing in this matter, and in no event later than the expiration of this TRO, each Defendant shall provide to the Commission and to the Temporary Receiver a completed financial statement, on the forms served on Defendants by the Commission, the Temporary Receiver, or an agent or employee of the Commission or Temporary Receiver, accurate as of the time of service of this Order on that Defendant.

**XIX.**

**CONSUMER CREDIT REPORTS**

**IT IS FURTHER ORDERED** that the Commission may obtain consumer reports concerning any Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, on written request, any credit reporting agency from which such reports are requested shall provide them to the Commission.

**XX.**

**SERVICE ON THE COMMISSION**

**IT IS FURTHER ORDERED** that with regard to any correspondence, pleadings, or notifications related to this action, service on the Commission shall be accomplished by courier, facsimile, or electronic mail (but not U.S. Mail) to the attention of Michelle

Grajales, Counsel for the Commission, Federal Trade Commission, 601 New Jersey

Ave., N.W., Room 3176, Washington, DC  20001, facsimile number (202) 326-3629,

e-mail: mgrajales@ftc.gov, before 4:45 p.m. (EDT) of the day that such service is due.

## XXI.

## PAPERS ON MOTION FOR PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that Defendants shall file any answering affidavits,

pleadings, or legal memoranda with the Court and serve the same on counsel for the

Commission no later than four (4) business days prior to the preliminary injunction

hearing in this matter, or as the Court orders otherwise.  The Commission may file

responsive or supplemental pleadings, materials, affidavits, or memoranda with the

Court and serve the same on Defendants no later than two (2) business days prior to

the preliminary injunction hearing in this matter, or as the Court orders otherwise.

**Provided that** service shall be performed by personal or overnight delivery, by

facsimile, by e-mail, or in accordance with the Court's ECF procedures, and documents

shall be delivered so that they shall be received by the other party no later than 4:45

P.M. (EDT) on the appropriate service dates required by this Section XXI, or as the

Court orders otherwise.

## XXII.
## SERVICE OF SUMMONS, COMPLAINT,
## AND OTHER PAPERS ON DEFENDANTS

**IT IS FURTHER ORDERED** that copies of the summons, complaint, other

papers and exhibits filed by the Commission with this Court, and this TRO may be

served on any Defendant by employees of the Commission or employees of the Temporary Receiver, or as the Court orders otherwise.

## XXIII.

## EXPIRATION OF TRO

Under the combined provisions of Fed. R. Civ. P. 65(b) and 6(a), unless extended, dissolved, or modified in the time and manner prescribed by Fed. R. Civ. P. 65(b), this TRO shall expire on Thursday, April 5, 2007, at 1:00 p.m. (MDT).

## XXIV.

## PRELIMINARY INJUNCTION HEARING

**IT IS FURTHER ORDERED** that the parties and their counsel, including each and all of the Defendants, shall appear before the Honorable Richard P. Matsch, United States District Judge for the District of Colorado, as ordered by him to show cause, if any there be, why the Court should not enter a preliminary injunction, pending final ruling on the Complaint, against Defendants 1) enjoining them from further violations of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a); 2) continuing the freeze of their assets; 3) appointing a permanent Receiver; and 4) imposing such additional relief as may be appropriate.

**SO ORDERED** at Denver, Colorado, on March 22, 2007, at 1:00 p.m. (MDT).

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**